IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-03109-PAB-MJW

SUSAN L. ESTES,

      Plaintiff,

v.

THOMAS J. VILSACK, Secretary of U.S. Department of Agriculture - Animal and
Plant Health Inspection Service,

      Defendant.

---

## ORDER

---

      This matter is before the Court on the Motion to Dismiss [Docket No. 8] filed by

defendant Thomas J. Vilsack, Secretary of the United States Department of Agriculture

("USDA").  The motion is fully briefed and ripe for disposition.

## I.  BACKGROUND

      This case arises out of plaintiff Susan L. Estes' employment with the USDA.

Plaintiff is a sixty-six year old female who was employed by defendant as a Regional

Administrative Officer for the Western Region of the Veterinary Services ("Western

Region") in Fort Collins, Colorado.  Plaintiff worked for the USDA in this position from

2001 until her retirement on December 31, 2010.  When plaintiff first began her

employment, her position qualified for compensation at level 13 of the General

Schedule pay scale ("GS-13"). [1]

---

[1] Pursuant to 5 U.S.C. § 5343, the Office of Personnel Management sets
employee salaries for federal employees which are consistent with the public interest
and in accordance with prevailing rates.  Government employees are compensated
based on a General Schedule which includes step and level increases.

On November 18, 2005, Ben Murphy, a Human Resources Classification Specialist, performed a desk audit of plaintiff's position.[2]  Mr. Murphy concluded that plaintiff's duties and responsibilities qualified her for compensation at a GS-14 level. Despite the desk audit, plaintiff's position remained at a GS-13 level.  Plaintiff claims that Bill Hudnall, the Deputy Administrator for the Western Region, refused to adopt Mr. Murphy's recommendation and instead retained plaintiff's position at a GS-13 level. Plaintiff alleges that she complained about the failure to adopt the desk audit to her supervisors, Mr. Hudnall, Dr. Brian McCluskey, Dr. Stephen Scott, Dr. Mark Davidson, and Dr. Jerry Diemer.  Docket No. 1 at 3, ¶ 13.  Plaintiff also states that her supervisors refused to upgrade another female employee, Diane Rangel, despite a desk audit.  *Id*. at 4, ¶ 19.

In 2007, Dr. McCluskey became the Regional Director for the Western Region. Plaintiff claims that, in his role as Regional Director, Dr. McCluskey engaged in a pattern of discrimination against older employees and female workers.  With respect to older employees, plaintiff asserts that Dr. McCluskey asked her to compile a list of employees who were eligible for retirement.  Dr. McCluskey then discriminated against employees identified on the list by assigning them to tasks and responsibilities outside the scope of their job descriptions.  Docket No. 1 at 4, ¶ 21.  Plaintiff contends that Dr.

---

[2] As will be discussed in greater detail below, a desk audit is a process by which a federal employee challenges the pay grade of his or her position.  *Palermo v. Clinton*, 457 F. App'x 577, 578 (7th Cir. 2012).  This is sometimes called an "accretion-of-duties" promotion because the desk audit is meant to trigger a promotion to match the employee's accretion of duties over time.  *See Adesalu v. Copps,* 606 F. Supp. 2d 97, 103 (D.D.C. 2009).

McCluskey assigned excessive work in an attempt to force older employees to retire. *Id*.  In addition, plaintiff claims that Dr. McCluskey's actions created a climate of fear and intimidation as older employees felt "set up" to fail assignments and were threatened with negative performance evaluations.  *Id*. at 4-5, ¶ 22.

Plaintiff points to a November 25, 2008 Letter of Instruction written by Dr. McCluskey as a specific instance when she was the subject of discrimination.  Plaintiff avers that the Letter of Instruction included "erroneous allegations of non-completion and job performance problems."  Docket No. 1 at 5, ¶ 27.  She claims that her concerns about the Letter of Instruction were resolved through mediation and resulted in a signed Collaborative Resolution Program Agreement ("CRPA").  *Id*. at 6, ¶ 29.  Plaintiff contends that, prior to the execution of the CRPA, Dr. McCluskey discussed her age and potential date of retirement.  *Id*. at ¶ 30.  Plaintiff also claims that the CRPA did not improve her working conditions because Dr. McCluskey never adhered to its terms.  *Id*. at ¶ 31.

According to plaintiff, Dr. McCluskey held discriminatory animus towards female employees.  She claims that Dr. McCluskey changed the job description for an Associate Regional Director in order to exclude the only female candidate – Dr. Nora Wineland.  Docket No. 1 at 5, ¶ 23.  Plaintiff contends that Dr. Lily Rai and Dr. Evelyn Williams both received awards of back pay after they filed a complaint against Dr. McCluskey with the Equal Employment Opportunity Commission ("EEOC").  *Id*. at ¶¶ 24-25.  Additionally, plaintiff asserts that Dr. McCluskey allowed Angela Pelzel, a Program Manager for the Western Region, to sign official USDA correspondence with

the title of "Regional Epidemiologist" even though she was not qualified for this position. *Id*. at 3-4, ¶¶ 15-17.  Plaintiff claims that Dr. McCluskey retaliated against her for complaining about Ms. Pelzel's misrepresentation.  *Id*.  On June 14, 2010, plaintiff discovered that a male employee, working for the Eastern Region, with the same "job description, responsibilities, [and] duties as herself, was classified and promoted from a GS-13 to a GS-14 level."  *Id*. at 6, ¶ 32.

On June 28, 2010, plaintiff contacted an EEO counselor and complained of discrimination on the basis of age, sex, and retaliation.  *Id.* at 2, ¶ 7.  On October 28, 2010, plaintiff filed a formal charge of discrimination with the EEOC.  She received a final agency decision on September 12, 2011.  Docket No. 12-3.  On November 29, 2011, plaintiff commenced this action alleging that she was subject to: (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e *et seq.*; (2) retaliation in violation of Title VII; and (3) discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.  Docket No. 1 at 7-9.

On February 13, 2012, defendant filed a motion to dismiss all of plaintiff's claims pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  Defendant argues that the Court lacks subject matter jurisdiction over plaintiff's Title VII and ADEA claims because plaintiff filed an untimely charge of discrimination.  Docket No. 8 at 4-6.  Defendant also claims that plaintiff fails to assert a retaliation claim because she does not allege that she engaged in protected activity.  *Id*. at 10.

4

## II.  STANDARD OF REVIEW

The Court's function on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim.  Fed. R. Civ. P. 12(b)(6); *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted).  In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted).  At the same time, however, a court need not accept conclusory allegations.  *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations

respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (quotation marks and citation omitted).

With respect to Title VII claims, while the 12(b)(6) standard does not require that plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether plaintiff has set forth a plausible claim. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *see also Twombly*, 550 U.S. at 570.

## III.   ANALYSIS

### A.   Timeliness of Title VII Claims

A federal employee asserting an employment discrimination claim "must initiate contact with a[n] [Equal Employment Opportunity] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved within thirty days, the EEO counselor must issue a notice informing the employee of his right to file a formal discrimination complaint with the employing agency within 15 days of receiving the notice. *Id*. at § 1614.105(d). Once a complaint is filed, the agency has 180 days to investigate the allegations. 29 C.F.R. § 1614.106(e)(2). The employee may appeal the final determination of the agency to a federal district court within ninety days of the receipt of the final agency action or 180 days after filing the formal complaint if no action is taken by the agency. 29 C.F.R. § 1614.407.

Defendant argues that, because plaintiff's Title VII claim should be analyzed as a failure-to-promote claim accruing in 2005 and not a wage discrimination claim, the

Court should find that she failed to timely exhaust her administrative remedies. Defendant contends that, because a desk audit is related to promotion decisions, plaintiff's Title VII claim challenges defendant's failure to comply with a recommendation for promotion.  Docket No. 8 at 7-9.[3]  Plaintiff responds that her desk audit does not qualify as a promotion because her written job duties and responsibilities did not change as a result of the desk audit. Docket No. 12 at 8-9.[4]  The Court finds that, regardless of how plaintiff's claim is characterized, she is not barred from bringing it on untimeliness grounds.

To the extent plaintiff alleges a discriminatory failure to promote, the relevant notice is when plaintiff was first advised that her supervisors would not implement the desk audit recommendation.  The limitations clock for non-wage discrimination claims starts running when a plaintiff first knew or should have known of her injury, whether or not she realized the cause of her injury was unlawful.  *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1177 (10th Cir. 2011) ("whether the adverse consequences flowing from the challenged employment action hit the employee straight away or only much later, the 'limitations period [ ] normally commence[s] when the employer's decision is made' and 'communicated' to the employee.").  Here, plaintiff was denied a promotion as early as 2005.

---

[3]Defendant also argues that plaintiff concedes this fact as one of her prayers for relief requests that defendant "Promote Plaintiff to the GS-14 level and pay position, to which she was entitled, following her audit of 2005."  Docket No. 1 at 9, ¶ B.

[4]Given that the determination of whether a desk audit is part of the promotion process presents a legal conclusion, the Court need not accept plaintiff's factual allegations as true.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (when reviewing a complaint's legal conclusions, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable").

Defendant argues that "[p]laintiff's claim that she was not promoted to a GS-14 position on the basis of her gender and/or sex should be dismissed for failure to exhaust." Docket No. 8 at 9. Defendant claims this is a jurisdictional bar to plaintiff's claim. But defendant contends that plaintiff failed to contact an EEO counselor in a timely manner, not that she completely failed to do so. *See id*. at 9-10. While the exhaustion of administrative remedies is a jurisdictional prerequisite to instituting an action in federal court under Title VII, *see Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002), timely exhaustion is not. *See Jones v. Runyon*, 91 F.3d 1398, 1399 n. 1 (10th Cir. 1996). Rather, it is "similar in nature to a statute of limitations defense, which is subject to waiver and tolling." *Douglas v. Norton*, 167 F. App'x 698, 704 n.9 (10th Cir. 2006) (citing, *inter alia*, *Harms v. IRS*, 321 F.3d 1001, 1009 (10th Cir. 2003)).

A statute of limitations argument constitutes an affirmative defense. However, "Rule 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as noncompliance with the limitations period." *Bullington v. United Air Lines Co.*, 186 F.3d 1301, 1310 n.3 (10th Cir. 1999) (citation omitted), *implicitly overruled on other grounds as recognized by Boyer v. Cordant Technologies*, 316 F.3d 1137, 1140 (10th Cir. 2003). Defendant points out that plaintiff knew of the result of the desk audit in 2005, yet did not comply with the exhaustion requirements and filing of a suit within the mandated time periods. However, the present record also includes a letter from the Director of the Office of Adjudication of defendant's Office of the Assistant Secretary of Civil Rights "accepting

8

and referring for investigation" allegations including the failure to "upgrade" plaintiff's position "since November 18, 2005." Docket No. 12-1 at 1. Arguably, therefore, defendant waived the right to later contend that the claims were exhausted in an untimely fashion. The Court, however, does not need to resolve that issue at this time.

In its reply, defendant does not address the issue of whether its acceptance of the claims at the administrative level can constitute a waiver. Instead, defendant relies on the same letter to argue that it "explicitly dismissed Plaintiff's claim because she 'failed to contact an EEO Counselor within forty-five (45) days of the alleged discriminatory events.'" Docket No. 13 at 1 (citing Docket No. 12-1 at 3). The quoted language, however, relates to a separate claim relating to plaintiff's receipt of a Letter of Instruction.

The Final Agency Decision does not address issues of untimeliness. *See* Docket No. 12-3; *cf. Kurtz v. McHugh*, 423 F. App'x 572, 577 (6th Cir. 2011) (stating that in that circuit "agencies do not waive the defense of untimely exhaustion merely by accepting and investigating a complaint of discrimination" but that "'waiver occurs when the agency decides the complaint on the merits without addressing the untimeliness defense'") (citation omitted). The issue therefore arises whether agency acceptance and investigation of the claims under the circumstances presented here would be sufficient to constitute a waiver in the Tenth Circuit. *Cf. Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir. 1992) (stating that in the Fifth Circuit, "[i]n order to waive a timeliness objection, the agency must make a specific finding that the claimant's submission was timely"). Consequently, defendant has failed to clearly demonstrate that plaintiff will not be able to prove any facts that might preserve her Title VII claims against assertion of a

9

timeliness challenge.  *See Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005) ("At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute.") (internal quotation marks and citations omitted).  Therefore, the Court will deny defendant's motion to the extent it requests dismissal of plaintiff's Title VII discrimination claim as untimely.

### B.  Title VII Retaliation Claim

Plaintiff alleges that Dr. McCluskey retaliated against her after she complained about Ms. Pelzel's misrepresentations concerning her job title in official USDA correspondence.  Docket No. 1 at 4, ¶ 17.  Plaintiff also asserts that Dr. McCluskey retaliated against any employee who complained about Ms. Pelzel's promotion to "Program Manager."  *Id*., ¶ 18.

Title VII makes it unlawful for an employer to retaliate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  A plaintiff can similarly establish retaliation either by directly showing that retaliation played a motivating part in the employment decisions, or indirectly by relying on the three-part *McDonnell Douglas* framework.  *See Twigg v. Hawker Beechraft Corp.*, 659 F.3d 987, 998-999 (10th Cir. 2011).  To state a prima facie case for retaliation under Title VII, a plaintiff must show "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."

10

*Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

Defendant contends that the Court lacks jurisdiction over plaintiff's retaliation claim because it is untimely. Docket No. 8 at 10. Moreover, even if plaintiff's retaliation claim was timely, defendant argues that her claim should be dismissed because plaintiff fails to demonstrate that she engaged in protected activity. *Id*.

The Court does not need to address the issue of timeliness because the Court finds that plaintiff's complaint does not state a claim for retaliation. First, plaintiff's complaints about Ms. Pelzel's promotion do not constitute protected opposition to discrimination. To constitute protected activity, plaintiff must have had a reasonable, good-faith belief that Ms. Pelzel's promotion or misrepresentations violated Title VII. *See Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984). Under Title VII, to raise a gender discrimination claim, plaintiff must show that she was treated differently than someone outside of her protected class. *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1215 (10th Cir. 2010). Given that Ms. Pelzel and plaintiff are both of the same gender – and there is no claim of race or ethnic discrimination – plaintiff cannot show that she engaged in protected activity when she complained of Ms. Pelzel's promotion or misrepresentations.

Second, although plaintiff claims in her response brief that she makes other allegations of retaliation, Docket No. 12 at 2, none of the identified paragraphs of the complaint even mention the word "retaliation," much less state any facts supporting a colorable claim for retaliation. Accordingly, plaintiff's claim of retaliation is dismissed because her complaint does not sufficiently allege a prima facie case of

retaliation pursuant to Title VII.  *Khalik*, 671 F.3d at 1194.

### C.  ADEA

Defendant argues that plaintiff fails to allege a claim for violation of the ADEA.

Docket No. 13 at 4.  The ADEA provides that "no civil action may be commenced" in

federal court unless the plaintiff first files a grievance with the appropriate administrative

agency.  29 U.S.C. § 626(d)(1).[5]  To succeed on a claim of age discrimination, a plaintiff

must prove by a preponderance of the evidence that her employer would not have

taken the challenged action but for the plaintiff's age.  *Jones v. Okla. City Pub. Schs.*,

617 F.3d 1273, 1277 (10th Cir. 2010) (citing *Gross v. FBL Financial Servs., Inc.*, 557

U.S. 167, 177 (2009)).

Plaintiff's ADEA case is governed by the burden-shifting framework outlined in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Jones*, 617 F.3d at 1278.

Pursuant to the *McDonnell Douglas* framework, plaintiff must identify evidence sufficient

to support a prima facie case of discrimination on account of her age.  *Id*.  To assert a

prima facie case of age discrimination, a plaintiff must show "1) she is a member of the

class protected by the [ADEA]; 2) she suffered an adverse employment action; 3) she

was qualified for the position at issue; and 4) she was treated less favorably than others

---

[5]Defendant claims that plaintiff's ADEA claim is time-barred because she failed to bring a timely EEOC claim.  Docket No. 8 at 9-10.  Given that the timeliness of plaintiff's ADEA claim is not jurisdictional, the Court will focus on whether plaintiff has asserted sufficient facts to establish a prima facie case.  *See Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994) (recognizing that an untimely ADEA claim is subject to waiver, estoppel, and equitable tolling); *Al-Ali v. Salt Lake Cmty. Coll.*, 269 F. App'x 842, 847 (10th Cir. 2008) (equitable tolling may be appropriate when the plaintiff has been lulled into inaction by an employer's deliberate design or action that the employer should unmistakably have understood would cause the employee to delay filing his charge).

not in the protected class." *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998).  Liability only attaches if a plaintiff's age actually played a role in the employer's decisionmaking process.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000).

The Court concludes that plaintiff's complaint is devoid of any factual allegations that would plausibly support a prima facie case of age discrimination. *See Khalik*, 671 F.3d at 1192 (finding that a plaintiff must include some allegations about each element of a claim, or at least allegations from which a court can draw reasonable inferences about each of the elements).  As noted above, one element of a prima facie claim of age discrimination is plaintiff suffering an adverse employment action.  To establish an adverse employment action, plaintiff must demonstrate that the employer's conduct was materially adverse to the employee's employment status.  *Wells v. Colorado Dept. of Transp.*, 325 F.3d 1205, 1213 (10th Cir. 2003).  "[A] mere inconvenience or an alteration of job responsibilities is not an adverse employment action." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004) (internal quotation marks and citation omitted).  Instead, to qualify as an adverse employment action, the action must result in "a significant change in employment status, such as . . . firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Aquilino v. Univ. of Kan.*, 268 F.3d 930, 934 (10th Cir. 2001) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Plaintiff alleges that she received a Letter of Instruction from Dr. McCluskey in November 2008.  Docket No. 1 at 5, ¶ 27.  However, she does not allege that the Letter

of Instruction adversely impacted her job status or resulted in a significant change in her employment responsibilities.  Plaintiff states that she signed a CRPA with Dr. McCluskey, which he never adhered to, but does not explain how Dr. McCluskey's failure to adhere to the CRPA constituted an adverse employment action.  Under the ADEA, unsubstantiated "reprimands and unnecessary derogatory comments . . . are not included within the definition of adverse [employment] action absent evidence that they had some impact on the employee's employment status."  *Sanchez*, 164 F.3d at 533 (quotation omitted); *see also Mirzai v. State of New Mexico General Servs. Dep't*, 506 F. Supp. 2d 767, 785 (D.N.M. 2007) (demeaning or allegedly disagreeable treatment does not constitute an adverse employment action).[6]  Although plaintiff need not allege every threat or incident giving rise to her employment discrimination claims, she must do more than make conclusory allegations that defendant engaged in threatening behavior.  Accordingly, because plaintiff fails to identify an adverse employment action, her ADEA claim is dismissed.

## IV.  CONCLUSION

Therefore, it is

**ORDERED** that Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) is GRANTED in part and DENIED in part. Plaintiff's retaliation and age discrimination claims are dismissed.

---

[6]Neither plaintiff's complaint nor response to the motion to dismiss alleges an ADEA claim of a hostile work environment.  Accordingly, the Court does not address such a claim.

DATED September 27, 2012.

BY THE COURT:


  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge